**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**STEVEN RICHARD TAYLOR,**

Plaintiff,

v. Case No. 3:26-cv-469-JEP-SJH

**RICHARD COMERFORD** and
**RANDALL POLK**,

Defendants.
_________________________________/

**PLAINTIFF'S MEMORANDUM ON THE IMPACT OF *GUARDADO***

On March 3, 2026, Plaintiff Steven Taylor sought relief under 42 U.S.C. § 1983, challenging the barriers Defendants have imposed on his and this Court's ability to know whether Florida is carrying out lethal-injection executions consistent with the Constitution. ECF No. 1 at ¶ 7. Mr. Taylor argued that the Defendants' limited interest in maintaining secrecy pursuant to Florida state law is an insufficient basis for the categorical ban that Defendants have enacted for lethal injection-related records requests. This interest does not outweigh Mr. Taylor's protected liberty interest in obtaining information implicating his Eighth Amendment rights.

Mr. Taylor's federal due process claim is strengthened by the information revealed and the process that occurred in *Guardado v. Comerford,* No. 3:26-cv-2596-MMH-SJH (M.D. Fla. Oct. 30, 2026), which "brought to light concerning facts about

[Defendants'] failure to maintain accurate records for drugs used in its executions." *Guardado v. Sec'y*, No. 26-14027, 2026 WL 3327719 at *7 (11th Cir. Nov. 2, 2026) (Pryor, J., concurring). The proceedings in *Guardado* show why Defendants' overbroad secrecy claim is dangerous and inconsistent with due process. Newly revealed information in that case, which Florida had sought to keep secret, exposed "Florida's response once it learned…about the errors in its drug log," which included using Wite-Out to cover up information it did not want seen again. As Judge Jill Pryor on the Eleventh Circuit observed, "[t]he State's lack of transparency and failure to maintain accurate records is deeply concerning," particularly where "the failure occurred with the storage of drugs used to carry out executions." Otherwise, Defendants are unable to "demonstrate that [they are] carrying out executions according to its protocols and in compliance with the Constitution." *Id.*

In a case concerning access to information, the developments in *Guardado* show why this Court should allow Mr. Taylor's § 1983 action to proceed further. The heart of Mr. Taylor's claim is Defendants' claim of total secrecy in the wake of multiple errors in administration of the protocol coming to light. Although the Court in *Guardado* ruled, under the heightened standard attendant to a stay of execution and specific factual allegations in that case, that an Eighth Amendment claim had not been established by the information available to the prisoner, that does not impact Mr. Talor's due process claim. Without a declaratory judgment from this Court under

a Fourteenth Amendment analysis, Defendants will continue to claim total secrecy of their lethal injection records despite a documented history of maladministration.

## I. The analysis of Mr. Taylor's allegations is legally and procedurally distinct from those presented in *Guardado*

At the outset, the legal issue presented in Mr. Taylor's § 1983 complaint is distinct from that presented in *Guardado*. Mr. Taylor seeks to vindicate his federal due process rights that were violated by Defendants' refusal to comply with public records requests following their production of records in October 2025, which revealed a pattern of deviations of the protocol implicating a risk of future injury should he be executed by an unauthorized variant of the protocol combined with Defendants' documented recklessness. Mr. Guardado, on the other hand, presented an Eighth Amendment claim subject to the *Baze-Glossip* analysis. The district court found that Mr. Guardado had not demonstrated a substantial likelihood of success on the merits under the stringent standard of *Baze/Glossip*, which requires a definitive showing of a "substantial likelihood of serious harm." *Baze v. Rees*, 553 U.S. 35, 50-52 (2008).

Contrary to a methods-of-execution claim under *Baze/Glossip*, the inquiry in a federal due process claim is different: "[t]he fundamental requisite of due process of law is the opportunity to be heard[.]" *Ford v. Wainwright*, 477 U.S. 399, 417-18 (1996). A procedural due process claim such as Mr. Taylor's asks the Court "whether [the individual's] interest in avoiding [] loss outweighs the governmental interest [at

stake.]" *Goldberg v. Kelly,* 39 U.S. 254, 262-63 (1970). Resolving Mr. Taylor's claim on the ground that Mr. Guardado's legally distinct claim failed under a heightened stay standard would be to commit the error the *Ford* Court warned of: "[failing] to include the prisoner in the truth-seeking process." 477 U.S. at 413. As a result, Mr. Taylor should be afforded the "basic ingredient of due process"—the "opportunity to be allowed to substantiate a claim before it is rejected." *See id.* at 414.

Mr. Taylor's case concerns the federal due process issue created by Defendants' routine refusal to comply with public records requests and intentional misconstruction of Florida's secrecy statute in order to prevent inquiry into routine violations of the lethal injection protocol. This is not a method of execution challenge. Rather, this Court should consider Defendants' misappropriation of Florida's secrecy statute as a manner of skirting future claims pertaining to their adherence to the lethal injection protocol. As Mr. Taylor demonstrates in his § 1983 complaint, Defendants' unjustified claim to absolute secrecy and refusal to comply with Mr. Taylor's requests for public records concerning the method of execution he could potentially face does not comport with federal due process. ECF No. 1.

Furthermore, the lethal injection claim in *Guardado* was litigated under a truncated timeframe due to the active death warrant, thus it was subject to a heightened evidentiary standard compared to Mr. Taylor's instant claim, which remains ripe for assessment under the 12(b)(6) standard. Indeed, the doctrinal

principles undergirding the 12(b)(6) and stay standards are inapposite: the 12(b)(6) standard is meant to encourage substantiated claims to proceed further, whereas a district court considering a stay of execution is instructed only to do so after finding established equitable principles are met. *Compare Long v. Sec'y, Dep't of Corr.,* 924 F.3d 1171, 1177 (11th Cir. 2019) (considering the "strong equitable presumption" against granting a stay in context of other equitable principles), *with Speaker v. U.S. Dep't of Health & Human Servs. Ctr. for Disease Control & Prevention*, 623 F.3d 1371, 1384-86 (11th Cir. 2010) (noting a plaintiff is only required to plead "enough factual content to nudge his claims across the line from conceivable to plausible").

At this stage, Mr. Taylor's claim is to be assessed under a low bar, wherein he need only "plead enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *James Rivers Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mr. Taylor is not required to prove his theory at this stage, but only to present plausible factual allegations supporting his claim. *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014).

In contrast, the Eighth Amendment claim in *Guardado* was assessed in the context of a stay of execution, which is subject to a heightened standard of review.[1]

---

[1] To that end, Mr. Guardado's § 1983 complaint and Defendants' motion to dismiss were dismissed as moot following his execution. *Guardado*, ECF No. 68.

Rather than the 12(b)(6) standard where Mr. Taylor's claim now sits, the district court considered whether Mr. Guardado had demonstrated "a significant possibility of success on the merits." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). Because a stay of execution is an equitable remedy, *see Long,* 924 F.3d at 1176, the district court was tasked with deciding to issue a stay only after determining whether Mr. Guardado proved "(1) he [had] a substantial likelihood of success on the merits, (2) he [would] suffer irreparable injury unless the injunction issues, (3) the injunction would not substantially harm the other litigant, and (4) if issued, the injunction would not be adverse to the public interest." *Id.* These factors are wholly inapplicable here, and thus the district court's ultimate conclusions are not decisive of Mr. Taylor's due process claim.

## II. The *Guardado* proceedings indicate that Defendants are needlessly and improperly obstructing access to records and information in violation of due process

Mr. Taylor has argued that Defendants' narrow interest in secrecy does not outweigh the underlying Eighth Amendment concerns implicated by Defendants' refusal to produce records related to its lethal injection practice. As Mr. Taylor alleged in his § 1983 complaint, Defendants have made clear they will refuse to provide any additional information regarding the lethal injection protocol, claiming total secrecy under Florida's secrecy statute. The factual development in *Guardado* only undermines that position.

Under the balancing test put forth by the Supreme Court in *Goldberg*, Defendants' actions violate procedural due process. 397 U.S. at 254, 262-63. Balancing Mr. Taylor's due process rights with the implicated governmental interests requires the consideration of three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards,"; and (3) "the [Defendants'] interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). Mr. Taylor's protected liberty interest in an execution that complies with the Constitution is well established. *See* ECF No. 3 at 5-12. What the evidentiary hearing in *Guardado* illustrates, however, is that Defendants' overly broad claim of secrecy does more to erode Mr. Taylor's due process protections than it vindicates their own interests.

Even before the *Guardado* evidentiary hearing began, Defendants attempted to impede review of their recordkeeping. Defendants sought to limit the court's inquiry into their own conduct by seeking to restrict the hearing to just four notations of expired etomidate which appeared in the records disclosed in October 2025. *Guardado*, ECF No. 23 (Oct. 16, 2026). This request was rejected. Soon after, on October 19, 2026, the district court permitted limited discovery and ordered

Defendants to produce updated drug inventory logs from "September 30, 2025, to present." *Guardado,* ECF No. 38 at 3. Those updated records revealed, for the first time, that the pattern of documenting the administration of expired etomidate, and the subsequent cover up with Wite-Out, had occurred six times, not four. Without the production of those logs, which occurred only at the direction of the court, the full scope of Defendants' malfeasance would have been limited, implicating the intent behind prior refusals to produce such records.

Mr. Taylor has previously alleged that the Defendants are capable of producing redacted records that protect their interest in secrecy while also providing necessary information regarding their execution procedures. ECF No. 1 at ¶ 35. This was proven in the *Guardado* litigation. There, Defendants disclosed redacted records, including updated drug logs "in the same manner as the drug logs already in the Court record" but "nothing more." *Guardado*, ECF No. 38 at 3. Thus, the records are readily available in redacted form, even at short notice, and the secrecy statue was honored by the use of the simple redactions.

Indeed, this information being accessible to Mr. Taylor and the public has not, and does not, implicate the identity of "any person or entity that participates in, has participated in, or will participate in an execution" as Defendants have claimed. ECF No. 1 at ¶ 34. During the *Guardado* evidentiary hearing, Defendants' updated drug logs, coupled with Defendants' exhibits which included selected executioners' logs

and FDLE monitors' logs, were filed in open court as exhibits. *Guardado*, ECF Nos. 55-56. Defendants did not seek redaction or have any objection to those documents being made publicly available or being filed in open court. When the transcript of the evidentiary hearing was entered on the docket on October 26, 2026, notice was given to the parties to seek redactions within seven calendar days. *Guardado,* ECF No. 54. Defendants did not seek redactions relating to discussion of the records that were produced, including drug logs or execution monitors' records. *See Guardado*, ECF No. 60. The developments in *Guardado* therefore only underscore that the information Mr. Taylor seeks, and was rejected outright, is indeed readily producible and capable of being publicly available without implicating secrecy, and that Defendants' prior refusal to produce any of this information was, in fact, overly broad, obstructive, and a violation of Mr. Taylor's right to due process.

## III. *Guardado* did not resolve underlying Eighth Amendment implications

The factual developments in *Guardado*, which occurred during a truncated proceeding under a higher evidentiary standard than Mr. Taylor now faces, do not mitigate the underlying liberty interest—an execution that comports with the Eighth Amendment—supporting Mr. Taylor's due process claim.

In the context of Defendants' already inherently risky lethal injection protocol, any deviation, such as giving expired, lower, or other drug doses, carries substantial risks of torturous and prolonged pain during an execution. In fact, many of those

issues remain outstanding after *Guardado*—Defendants still have not provided a coherent answer to how or why those errors occurred, or if they have been rectified, and are still unable to conclusively explain what happened on certain identified execution dates. The remaining discrepancies support that Mr. Taylor has a protected liberty interest that is protected by the Fourteenth Amendment and which affords him at least "some minimal procedural safeguards." *Ohio Adult Parole Authority v. Woodward,* 523 U.S. 272, 288-89 (1998) (O'Connor, J., concurring in part and concurring in the judgment).

Within this case, Defendants' accounts of the violations revealed in the October 2025 records contradict what was revealed during the *Guardado* hearing. In Defendants' motion to dismiss, Defendants sought to discredit the content of the records, stating that the "records themselves are perfectly consistent with the drugs being disposed of or used for non-execution-related purposes." ECF No. 14 at 19. Yet, as Judge Pryor observed, "[i]t is undisputed that the logs the Department maintained showed that Florida had used expired etomidate in several previous executions," and that "the State's lack of transparency and failure to maintain accurate records is deeply concerning," *Guardado*, 2026 WL 3327719 at *7-8. Regardless of the district court's resolution of these instances in isolation,[2] this

[2] The district court in *Guardado* acknowledged Defendants' logs contain a "concerning number of errors" and "poor record keeping." *Guardado,* ECF No. 63 at 43. Illustrating that point, the district court ordered Defendants to provide

practice reflects Defendants' approach to the protocol as a whole and has broader implications for the drugs—and dosages—that may be used during Mr. Taylor's execution, creating a substantial likelihood of a torturous, drawn-out death.

It was revealed in *Guardado* that Defendants chose to Wite-Out their records to alter numerous entries of expired etomidate spanning months—changing the expiration date from 1/31/2025 to 1/31/2027 without noting why or how the incorrect date was logged originally. *Guardado*, No. 3:26-cv-2596-MMH-SJH, ECF No. 55-8 at 8. Despite Defendants' attempts to limit the scope of the hearing to four instances involving Wite-Out, *Guardado*, ECF No. 23, records reveal this happened six times. *Guardado*, ECF No. 55-8 at 8. FDOC Bureau Chief Pharmacist Dr. Renea Marcano's inquiry into the violations was limited to the timeframe addressed in *Walls*, No. 4:25-cv-00488-MW-MAF, ECF 1 (N.D. Fla. Nov. 26, 2025), which ended on September 30, 2025. *Guardado,* ECF No. 62 at 221 (Dr. Marcano explaining the errors came to her attention in December or January). Dr. Marcano

---

unredacted drug inventory logs for in camera review because the redacted version of Defendants' records were insufficient to resolve the question of expired etomidate. Defendants at first only partially complied with that request and were again ordered by the district court to provide those records on October 23, 2026. Guardado, ECF No. 53. As made clear in the district court's order denying Guardado a stay of execution, Guardado, ECF No. 63, those unredacted drug logs were critical for the Court's adjudication of that claim—that is, Defendants' recordkeeping, as is, and the information they have rarely released, are insufficient to alleviate Eighth Amendment concerns. The fact that Defendants' execution records as produced in *Guardado* are so deficient they are incapable of resolving an Eighth Amendment claim should be considered by this Court.

apparently did not investigate what occurred after that date, beyond applying Wite-Out to entries of expired etomidate corresponding with the Samuel Smithers and Norman Grim executions that occurred in October 2025. *Guardado,* ECF 55-8 at 8. Dr. Marcano's only explanation for the repeated documented use of expired drugs was that a person working in the pharmacy did not speak English as their first language, thus erred in writing down the year. *Guardado*, ECF No. 62 at 233. She did not explain why a person who would misunderstand years due to a language barrier would be employed there or why this error was not caught by any other person prior.

In a case like Mr. Taylor's that centers around Defendants' attempts to obfuscate inquiry into their own behavior, the application of Wite-Out to execution drug logs is particularly prescient. Indeed, given the fact that Defendants' logs are riddled with Wited-Out entries, this reflects a system, not an anomaly. As pharmaceutical expert Dr. Michaela Almgren testified at the *Guardado* evidentiary hearing, "if . . . there was only one [erroneous] entry . . ., then you would think that when [FDOC] made the next entry on August 29th" that they would notice the logging of expired drugs. *Guardado*, ECF No. 62 at 39. "But this kept on going and it did not seem to catch anybody's attention." *Guardado*, ECF No. 62 at 39. Dr. Almgren noted that Wite-Out is "completely inappropriate in proper recordkeeping[,]" *Guardado*, ECF No. 62 at 40, and this practice implicates the

reliability of Defendants' recordkeeping as a whole: "I would be very wary and concerned with these records because there are a number of corrections. And, in particular, that Wite-Out practice is just absolutely terrible[.]" *Guardado*, ECF No. 62 at 44.

Defendants' practice of simply erasing evidence of discrepancies raises fundamental concerns about Defendants' accountability for their own negligent behavior. *Guardado* therefore exemplifies exactly why allowing Defendants to continue to claim absolute secrecy is dangerous: regardless of the result of the district court's in camera review of Defendants' unredacted drug logs in *Guardado*, and pertinent here, Defendants' inability to explain or rectify internal recordkeeping errors calls into question a flawed system that creates a pervasive danger of substantial pain during an execution.

In sum, the evidentiary development in *Guardado* did not resolve every concern Mr. Taylor raised concerning Defendants' maladministration and recklessness. In his § 1983 action, Mr. Taylor sought "adequate process to investigate the documented and repeated maladministration of the lethal injection protocol." ECF No. 1 at 25-26. Mr. Guardado had sought pertinent information prior to the evidentiary hearing, including "information regarding drug storage, receipt, use, transportation, and disposal of pharmaceuticals, including expired drugs; FDLE monitors' notes from *each execution* in 2025 and 2026; and documents explaining

internal FDOC training, preparation, and any internal debriefing after the 36 executions carried out in 2025 and 2026." *Guardado*, ECF No. 30 at 4 (emphasis added). Given the limited scope and truncated timeframe of the *Guardado* warrant litigation, this information was not provided in discovery or was addressed only on a limited basis in testimony, without documentary support, at the evidentiary hearing. However, this information is fully relevant to Mr. Taylor's due process claim and remains outstanding. That inquiry is warranted here.

**IV. In light of new developments, amendment or supplement is warranted.**

To the extent this Court finds that the factual development in *Guardado* impacts Mr. Taylor's due process claim, allowing him to amend or supplement the complaint is appropriate and would be necessary to address the new information gleaned from *Guardado* that further highlights Defendants' disregard for adhering to the protocol and the perils of their overly broad approach to secrecy.

At this juncture, Mr. Taylor may amend his initial complaint with this Court's leave. Federal Rule of Civil Procedure 15(a)(2) notes that this leave should be freely given "when justice so requires." *See McKinley v. Kaplan*, 177 F.3d 1253, 1258 (11th Cir. 1999) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing

party....the leave sought should, as the rules require, be 'freely given.'") (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

In the alternative, under Rule 15(d), "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Rule 15(d) is permissive, allowing "supplementation even though the original pleading is defective in stating a claim or defense."

As explained herein, following the factual development in *Guardado,* Mr. Taylor's need for additional information is only heightened while the Defendants' enjoyment of total secrecy during executions is undermined. Therefore, should this Court find the developments in *Guardado* implicate Mr. Taylor's due process concerns, this Court should allow amendment or a supplement under Rules 15(a)(2) and (d).

**V. Conclusion**

*Guardado* does not impact the viability or distinct legal basis of Mr. Taylor's 42 U.S.C. § 1983 action, which requires a Fourteenth-Amendment analysis from this Court. The Court should deny Defendants' Motion to Dismiss and allow this case to proceed further.

Respectfully submitted,

/s/ Linda McDermott
LINDA MCDERMOTT
Chief, Capital Habeas Unit
SEAN GUNN
Federal Public Defender
Northern District of Florida
227 N. Bronough St., Suite 4200
Tallahassee, FL 32301
(850) 942-8818
linda_mcdermott@fd.org

*Counsel for Mr. Taylor*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing pleading has been furnished by the CM/ECF filing system to counsel for the Defendants, the Office of the Attorney General.

/s/ Sean Gunn
SEAN GUNN